## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ARLENE HARRIS**,

                    **Plaintiff**,

    **v.**                                          **Civil Action No. 21-cv-1083 (GMH)**

**ALEJANDRO MAYORKAS**,
*Secretary of Homeland Security, et al.*,

                    **Defendants**.

## MEMORANDUM OPINION & ORDER

Plaintiff Arlene Harris brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 42 U.S.C. § 621 *et seq.* ("ADEA"), and accuses her supervisors at the Federal Emergency Management Agency ("FEMA") of taking adverse action against her on account of her race, age, and sex, retaliating against her for engaging in protected activity, and creating a hostile work environment. Defendants, high-ranking officials at FEMA and the Department of Homeland Security, which oversees FEMA, have filed a motion to dismiss Plaintiff's Amended Complaint,[1] which alleges race and sex discrimination, retaliation, and the creation of a hostile work environment in violation of Title VII (Counts I, III, IV, and V, respectively) and age discrimination in violation of the ADEA (Count II). The Court grants Defendants' motion as to the discrimination claims (Counts I–III) because Plaintiff has failed to set forth any facts plausibly suggesting that the actions allegedly taken against her were motivated by discriminatory animus. Her hostile work environment claim (Count V) must be dismissed, as

---

[1] Plaintiff filed her initial complaint in April 2021. ECF No. 1. Thereafter, Defendants filed a motion to dismiss, ECF No. 12, and in response Plaintiff filed the Amended Complaint, ECF No. 17.

well, because none of the conduct she alleges—either individually or collectively—clears the high bar set for such claims. And while most of Plaintiff's allegations are not sufficiently material to sustain a retaliation claim, some are at this stage of this case, and the Court therefore only dismisses Count IV in part.[2] So, Defendants' motion is granted in part and denied in part.

## I.        BACKGROUND

Before assessing Defendants' motion to dismiss, the Court will first survey Plaintiff's allegations and briefly outline the arguments for and against dismissal.

### A.        The Amended Complaint

According to the Amended Complaint, Plaintiff is 58 year-old Black woman who has been a program analyst for FEMA since 2017. ECF No. 17-2 at 3. From 2017 to 2019, Plaintiff's employment at FEMA was proceeding smoothly, but she says things changed once her supervisor retired in July 2019. *Id.* at 3–4. In February 2020, she alleges that her new first line supervisor, Dominic Ionta, "gave [her] an undeserved lowered rating for Fiscal Year 2019," and that he further lowered the evaluation after she spoke with him about it. *Id.* at 4. As a result, Plaintiff says she did not receive her typical bonus. *Id.* In March 2020, Plaintiff contacted an equal employment office ("EEO") Counselor to report Ionta's evaluation and claimed at that time that she was discriminated against on the basis of her age, sex, and race. *See* ECF No. 17-3.

Then, in June 2020, Plaintiff alleges that another of her supervisors, Pamela Hubbard, required her to work for no pay on scheduled off days and forced her to work through lunch breaks. ECF No. 17-2 at 4. Plaintiff also says that Hubbard did not "timely meet [with] her to discuss her

---

[2] The relevant docket entries for purposes of this Memorandum Opinion & Order are: (1) the Amended Complaint and its attachments (ECF No. 17); (2) Defendants' motion to dismiss (ECF No. 22-1); (3) Plaintiff's opposition to Defendants' motion to dismiss (ECF No. 27); (4) Defendants' reply (ECF No. 28); Plaintiff's Notice of Supplemental Authority (ECF No. 30); and Defendants' Notice of Supplemental Authority (ECF No. 31). The page numbers cited herein are those assigned by the Court's CM/ECF system.

performance plan for fiscal year 2020." *Id.*  But there was more than that, Plaintiff alleges.  Starting in June 2020, she asserts that Hubbard "assigned impossible deadlines" and "commented about how the Plaintiff need[ed] to manage time better," "rudely" interrupted her when she requested assistance, and "disparaged [her], embarrassed her in front of co-workers and undeservedly gave praise to co-workers in front of Plaintiff just to humiliate [her]."  *Id.* at 6.  On June 16, 2020, Plaintiff filed a "formal complaint of discrimination" concerning the conduct to which she allegedly subjected.  *Id.* at 2; ECF No. 17-4 at 1.

Further, on numerous occasions between June and September 2020, Plaintiff contends that Hubbard denied her requests for leave, curtailed her communications with co-workers, and was generally "greatly disrespectful to the Plaintiff."  ECF No. 17-2 at 4–6.  Additionally, Plaintiff says that during that same time period, Hubbard stripped "75% of [her] core duties away without justification or foundation" and "eliminated 60% of the duties in [her] Performance Goals, with no notice or discussion."  *Id.* at 4–5.  In mid-July 2020, Plaintiff says Hubbard "yelled at [her], insulted her, gave her unreasonable deadlines and told her she did not do [budget] analysis."  *Id.* at 5–6.  About six weeks later, Hubbard gave Plaintiff only negative feedback during her mid-year evaluation and allegedly told Plaintiff that if she did not sign a performance improvement plan ("PIP"), "there would be even worse consequences."  *Id.* at 6.

On September 18, 2020, Plaintiff filed a report with FEMA's Office of Professional Responsibility and claimed that Hubbard and another supervisor, Amber Smith, had harassed and retaliated against her.  *Id.* at 7.  Several days later, on September 22, 2020, Plaintiff amended her EEO claims for a final time, and "FEMA accepted twelve separate claims"—spanning August 1, 2019 to September 17, 2020—"for investigation into charges of discrimination and retaliation."  ECF No. 22-1 at 14; *see also* ECF 17-4 at 1–3.  Plaintiff then took a leave of absence she says was

necessitated by the health impacts of the bullying and hostile treatment she was subjected to at work.  ECF No. 17-2 at 7.  She produces doctors' notes dating from the fall and winter of 2020 stating that she was suffering from "intermittent episodes of disequilibrium, balance issues, vertigo and Basal Ganglia Ischemia" that "had been greatly exacerbated by" her treatment at work.  ECF No. 17-6; *see also* ECF No. 17-2 at 7.  One of the notes indicated that Plaintiff "could work with her supervisor provided that the agency held the supervisor accountable for her unnecessary hostility."[3]  *Id.*

By March 5, 2021, Plaintiff returned to full-time work at FEMA, but she then allegedly faced a string of retaliatory conduct committed by Hubbard that included:  restricted work responsibilities and communications with colleagues, including a "ban" on attending most meetings and communicating with FEMA's Office of Chief Financial Officer and other budget analysts—the latter of which she says is "necessary for her job"; accusations of aggressiveness towards a supervisor; a poor performance review for the 2021 year that again resulted in the loss of a bonus; a new requirement that a supervisor approve emails she sent and that her emails not include Smith; and failing to timely approve her leave requests, necessitating cancellation or rescheduling of medical appointments "because leave was not approved in time."  *Id.* at 7–9.

On the basis of those allegations, Plaintiff says she was discriminated against based on her race (Count I) and gender (Count II) in violation of Title VII, discriminated against on the basis of age in violation of the ADEA (Count III), retaliated against in violation of Title VII (Count IV), and subject to a hostile work environment (Count V).  *Id.* at 9–12.

---

[3] The Amended Complaint does not make clear which of Plaintiff's supervisors the doctor's note referred to.

B.      **The Motion to Dismiss**

Defendants insist the Amended Complaint fails to state a claim for relief and must be dismissed. *See* ECF No. 22-1; Fed. R. Civ. P. 12(b)(6). Analytically, they group Plaintiff's claims into two buckets: the discrimination and retaliation claims (Counts I to IV), and the hostile workplace claim (Count V). As to the former, Defendants advance three arguments in favor of dismissal. First, they contend Plaintiff failed to administratively exhaust her claims arising from alleged conduct that occurred after she last amended her EEO complaint in September 2020. *Id.* at 13–16. Specifically, Defendants point to the medical leave of absence Plaintiff took from September 2020 to March 2021 and the discriminatory and retaliatory conduct she allegedly was subjected to following her return to work. *Id.* at 14. Claims related to that conduct must be rejected, Defendants urge, because there is no evidence Plaintiff ever sought EEO counseling and therefore no administrative action was ever taken with respect to it. *Id.* Defendants then contend that Plaintiff's allegations of "various discrete incidents of insults and abuse" are not sufficiently adverse to sustain the discrimination and retaliation claims stemming from that alleged conduct.[4] *Id.* at 16–20. Thus, they argue that allegations that Plaintiff's supervisor "yelled at [her]," "insulted her," "gave her unreasonable deadlines and told her she did not do analysis," "was greatly disrespectful to [her]," "assigned impossible deadlines," "commented about how the Plaintiff needs to manage time better," "failed to provide clear communications," "rudely cut her off," "disparaged [her]," "embarrassed her in front of co-workers," and "undeservedly gave praise to co-workers" are not actionable as discrete discrimination or retaliation claims. ECF No. 28 at 10;

---

[4] Defendants initially alleged that *all* conduct Plaintiff alleged was directed at her was not sufficiently adverse to state claims for retaliation or discrimination, ECF No. 22-1 at 16–20, but later scaled back the argument to target only the "allegations of various discrete incidents of insults and abuse," ECF No. 28 at 9–10, thereby excluding her allegations related to "lower review scores, requiring her to work on off days without compensation, limiting core duties, and curtailed communication with coworkers," *id.*

*see also* ECF No. 22-1 at 18–19.  Finally, Defendants contend that *all* of Plaintiff's discrimination and retaliation claims must be dismissed because she failed to sufficiently allege a causal link between the conduct she was allegedly subjected to and her race, sex, or age.  ECF No. 22-1 at 20–23.  Specifically, they say Plaintiff did not set forth factual material plausibly suggesting that certain, adverse actions were taken against her on the basis of a protected status.  *Id.*

Turning to Plaintiff's hostile work environment claim (Count V), Defendants ask the Court to dismiss it, as well, because none of the conduct she alleges, even when considered together, is "sufficiently severe or pervasive" to make out such a claim.  *Id.* at 23–27.  More, they say, Plaintiff's reliance on the same alleged conduct for her discrimination, retaliation, and hostile work environment claims is untenable because litigants "'cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.'"  ECF No. 28 at 16 (quoting *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005)).

Plaintiff, of course, takes the opposite tack and asks the Court to preserve her claims.  *See* ECF No. 27.  As to Defendant's exhaustion arguments, Plaintiff points to cases "holding that hostile work environment claims have a 'less stringent' standard in an exhaustion analysis than stand-alone claims."  *Id.* at 3.  She says that courts in this Circuit have developed a "totality of the circumstances test" that allows hostile work environment claims to ease under the traditional exhaustion bar so long as the unexhausted claims are "like or reasonably related to the allegations of the [EEO] charge and growing out of such allegations."  *Id.* at 3–4.  She then pushes back on Defendant's contention that the conduct she allegedly was subjected to was not sufficiently adverse to sustain the discrimination and retaliation counts.  *Id.* at 5–6.  Notably, she argues that the "lack of clear communication" provided by her supervisors "particularly limits [her] ability to perform her job satisfactorily as nobody can be expected to keep up with a supervisor's moving target of

expectations." *Id.* at 6.  That type of workplace, Plaintiff says, "is established for the purpose of setting up an employee to fail." *Id.*  Next, she asserts that, contrary to Defendants' position, she *did* adequately allege a causal connection between her protected statuses (race, sex, and age) and the conduct she endured.  *Id.* at 6–8.  She points to the allegations contained in the Amended Complaint "that similarly situated individuals outside of [her] protected class did not endure the treatment [she] did." *Id.* at 6.  Further, as to her racial discrimination claim, Plaintiff notes a supervisor's statement in an EEO report that there was "racial and social tension" in her office. *Id.*; ECF No. 17-3 at 4.  Plaintiff also emphasizes that there was sufficient temporal proximity between her initial EEO complaint in March 2020 and the string of subsequent conduct to raise the inference of retaliation.  ECF No. 27 at 7–8.

Finally, Plaintiff defends her hostile work environment claim, reasoning that because the Court "must take [her] allegation . . . that the cumulative effect of the discrete acts she endured was hostile" as true at the motion to dismiss phase, Defendant's motion must be denied.  *Id.* at 8–9.  The dispositive question, she says, is whether the conduct she suffered was sufficiently "severe or pervasive," and that "analysis cannot take place in a summary motion." *Id.* at 9.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal of a complaint based on a failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  As such, it tests the legal sufficiency of a complaint.  *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The Federal Rules require that a complaint provide "'a short and plain statement of [a plaintiff's] claim showing that [she] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

(1957)); Fed. R. Civ. P. 8(a).  A Rule 12(b)(6) motion does not assess the pleader's likelihood of success on the merits but only whether the pleader has properly stated a claim.  *E. Savings Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 11 (D.D.C. 2014).  Thus, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While "detailed factual allegations" are not required, a complaint must offer "more than labels and conclusions" to provide grounds for relief.  *Twombly*, 550 U.S. at 555.  In adjudicating motions to dismiss, district courts "may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims."  *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017).

Additionally, parties bringing claims pursuant to Title VII must first exhaust their administrative remedies.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  "The primary purpose of the exhaustion requirement is to provide the agency with sufficient notice to begin the investigative process."  *Hernandez v. Mao*, 235 F. Supp. 3d 172, 177 (D.D.C. 2017).  The exhaustion requirement is "not a jurisdictional prescription delineating the adjudicatory authority of courts," but, rather, may be raised as an affirmative defense.  *See Ft. Bend Cty. v. Davis*, __ U.S. __, __, 139 S. Ct. 1843, 1850–51 (2019).  Even after filing a charge with the agency's EEO, an employee may not bring a civil action for employment discrimination unless she has first received a notice of "final action" taken by the EEO.  *See* 42 U.S.C. § 2000e–16(c);

*Williams v. Dodaro*, 576 F. Supp. 2d 72, 82 (D.D.C. 2008).  Although the rules of exhaustion "should not be construed to place a heavy, technical burden" on plaintiffs, *Fennell v. AARP*, 770 F. Supp. 2d 118, 126 (D.D.C. 2011) (quoting *Park*, 71 F.3d at 907), a failure to exhaust administrative remedies "will ordinarily bar a judicial remedy," *Bowe–Connor v. Shinseki*, 923 F. Supp. 2d 1, 5 (D.D.C. 2013).  Relatedly, courts assessing exhaustion of remedies arguments at the motion to dismiss stage may consider "'any documents either attached to or incorporated in the complaint.'"  *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 138 (D.D.C. 2015) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016).

## III.    DISCUSSION

The Amended Complaint contains three discrimination claims (Counts I–III), a retaliation claim (Count IV), and a hostile work environment claim (Count V).  The Court will address them in turn.  The discrimination claims are inadequately pleaded, as they fail to allege sufficient facts to give rise to a plausible inference that Plaintiff's supervisors took actions against her *because of* her race, age, or sex.  The hostile work environment claim also fails because the actions Plaintiff has said that her supervisors took against her do not, either considered singly or in combination, rise to level of "severe or pervasive" abuse, which is necessary to sustain such a claim.  Plaintiff's retaliation claim is different story, however.  While most of the adverse actions she alleges are not enough to sustain a retaliation claim, Defendants do not contest that some are sufficiently adverse.  Accordingly, some Plaintiff's retaliation claims may proceed.

### A.    Title VII Race Discrimination Claim (Count I)

Plaintiff alleges that her supervisors discriminated against her on account of her race in violation of Title VII.  ECF No. 17-2 at 9.  She has not, however, alleged sufficient facts plausibly

suggesting that the actions taken against her were motivated by racial animus.  Accordingly, Count I is dismissed.

In Title VII cases alleging disparate treatment,

> a plaintiff establishes a *prima facie* case of discrimination by pleading facts from which it can reasonably be inferred that "(1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [her] employer took the action because of [her] membership in the protected class).[5]

*Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 321–22 (D.D.C. 2016) (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014)).  *Twombly* and *Iqbal* require that Plaintiff allege these elements with sufficient factual material "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.  As to the third prong, an inference of discrimination can be established through allegations that the plaintiff was "treated differently from similarly situated employees who are not part of the protected class."  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).  And in cases where, as here, "a plaintiff seeks an inference of discrimination based on 'disparate treatment,'" a Title VII plaintiff must plead

---

[5] Following the completion of the briefing on Defendants' motion to dismiss, the D.C. Circuit issued its opinion in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc).  In that case, the *en banc* court overruled prior precedent and held that "an employer that transfers an employee or denies an employee's transfer request because of the employee's race, color, religion, sex, or national origin violates Title VII by discriminating against the employee with respect to the terms, conditions, or privileges of employment."  *Id.* at 872.  In so doing, *Chambers* overruled the *Brown v. Brody,* 199 F.3d 446 (D.C. Cir. 1999), which had required an employee to allege "objectively tangible harm" to state a Title VII discrimination claim.  *Chambers*, 35 F.4th at 872, 874–75; *see also Liu v. Georgetown Univ.*, No. 22-cv-157, 2022 WL 2452611, at *5 (D.D.C. July 6, 2022) (rejecting an employer's post-*Chambers* argument that an employee "must 'allege *significant* changes to his employment status' to survive a motion to dismiss" Title VII discrimination claims (quoting the record)).

   In wake of *Chambers*, the parties submitted brief memoranda outlining their views on its applicability in this case.  *See* ECF Nos. 30 and 31.  Plaintiff simply noted that *Chambers* overruled *Brown v. Brody*—a case cited in passing by Defendants in their motion to dismiss—and requested that *Chambers* be applied in this case.  ECF No. 30 at 1.  Defendants acknowledge their citation of *Brown*, but argue in their memorandum that *Chambers* "does not alter the analysis of the pending motion to dismiss," both because Plaintiff here has not alleged a denial of lateral transfer and because they withdrew their contention that certain of Plaintiff's discrimination claims were not sufficiently adverse.  ECF No. 31 at 2; *see also* ECF No. 28 at 9–10.  Defendants also say that Plaintiff's discrimination claims are still subject to dismissal because, even setting to the side the issue of adverse action, she "nonetheless 'failed to plausibly allege a causal connection between these actions and an impermissible basis.'"  ECF No. 31 at 3 (quoting ECF No. 28 at 10 & n.3).  As will be explained in this section and those that follow, the Court agrees with Defendants that Plaintiff's Title VII discrimination claims fail for reasons divorced from the holding in *Chambers*.

sufficient facts to raise a plausible inference that "'all of the relevant aspects of her employment situation were "nearly identical" to those' of the other employees who did not suffer similar adverse employment actions." *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)); *see also Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'" (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 697, 697–98 (S.D.N.Y. 2011))).

Plaintiff's race discrimination claim fails to meet these standards.  Under the third prong of the pleading standard, Plaintiff was required to provide sufficient factual allegations to support a plausible inference of race discrimination.  The Amended Complaint, however, is devoid of any such factual material.  Although she alleges that she was repeatedly mistreated by her supervisors, ECF No. 17-2 at 3–9, there are no facts alleged from which it can be plausibly inferred that the mistreatment was racially motivated.   While the Amended Complaint generally avers that "[s]imilarly situated co-workers outside of the [her] race were not treated in the manner in which [she] was," *id.* at 9, Plaintiff offers no facts to back that up, rendering the allegation "just a legal conclusion—and a legal conclusion is never enough."  *SS & T, LLC v. Am. Univ.*, No. 19-cv-721, 2020 WL 1170288, at *5 (D.D.C. Mar. 11, 2020) ("'A plaintiff's assertion that [it] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough.'" (alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (affirming dismissal of Title VII discrimination claim where plaintiff's allegations were "too conclusory to

permit a reasonable inference of differential treatment of similarly situated employees”))).  Indeed, nowhere does the Amended Complaint even generally describe any comparator employees, how they were similarly situated, or how they were treated differently than Plaintiff.  Other courts in this District and elsewhere have not hesitated to dismiss disparate treatment Title VII claims with comparable pleading deficiencies.  *See, e.g.*, *Beaulieu v. Barr*, No. 15-cv-896, 2019 WL 5579968, at \*4 (D.D.C. Oct. 29, 2019) (dismissing Title VII discrimination claim where, as here, the plaintiff failed to “identify any ‘comparator’ employees who were treated differently”); *Budik*, 986 F. Supp. 2d at 7 (dismissing Title VII disparate treatment claim where, as here, the plaintiff “has not pleaded facts that show that ‘all of the relevant aspects of her employment situation were ‘nearly identical[]’ to those of her . . . Caucasian co-worker,” such as “the co-worker’s job title, or . . . any facts about the co-worker’s experience, seniority, or expertise”) (internal citation omitted) (quoting *Neuren*, 45 F.3d at 1514); *compare Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (concluding that the plaintiff’s allegation that he “was treated differently as a result of his race than whites”—even where the plaintiff identified an alleged comparator—was insufficient to sustain a Title VII claim at the motion to dismiss stage because, as here, no factual allegations plausibly suggested the comparator was “actually similarly situated”) *with Fennell*, 770 F. Supp. 2d at 128–29 (finding that Title VII plaintiff had sufficiently alleged race- and sex-based discrimination where he “identifie[d] three allegedly similarly situated white employees, and one similarly situated female employee, who engaged in comparable conduct but were not treated in alike manner”).[6]  Thus, Plaintiff’s allegation that “[s]imilarly situated co-workers outside of the

---

[6] A chorus of other courts have reached the same conclusion: Title VII plaintiffs pressing disparate treatment claims cannot make it past the motion to dismiss stage without coming forward with *some* facts that other, similarly-situated employees were treated differently.  *See, e.g.*, *Newell v. Acadiana Plan. Comm’n Inc.*, No. 20-cv-1525, 2022 WL 532758, at \*2 (W.D. La. Feb. 22, 2022) (finding that the plaintiff’s “allegations do not state a plausible disparate treatment claim under Title VII” where, as here, “[the plaintiff] points to no comparators to show that she was subject

[her] race were not treated in the manner in which [she] was," ECF No. 17-2 at 9, is no more than

a "formulaic recitation of a cause of action's elements" that is not sufficient to survive a motion to

dismiss,[7] *Twombly*, 550 U.S. at 555; *see also Easaw v. Newport*, 253 F. Supp. 3d 22, 30 n.4

(D.D.C. 2017) ("Stating simply 'I was turned down for a job because of my race' is precisely the

kind of conclusory allegation that is patently incompatible with *Twombly* and *Iqbal*'s pleading

requirements."); *cf. Markowicz v. Johnson*, 206 F. Supp. 3d 158, 169 (D.D.C. 2016) (noting that a

---

to less favorable treatment"); *Goddard v. Apogee Retail LLC*, No. 19-cv-3269, 2021 WL 2589727, at *8 (D. Md. June 24, 2021) ("Any [Title VII] claim of disparate impact on a protected status equally fails, as [p]laintiff points to no comparators from similarly situated nonmembers of a protected class."), *appeal dismissed*, No. 21-1814, 2021 WL 6689512 (4th Cir. Nov. 2, 2021); *Fukelman v. Delta Air Lines, Inc.*, No. 18-cv-2, 2020 WL 4587496, at *10 (E.D.N.Y. Apr. 13, 2020) ("Failure to identify any comparators at all, even in the motion to dismiss stage, makes [a Title VII claim] vulnerable to dismissal."), *report and recommendation adopted*, 2020 WL 2781662 (E.D.N.Y. May 29, 2020); *Mejia v. White Plains Self Storage Corp.*, No. 18-cv-12189, 2020 WL 247995, at *5 (S.D.N.Y. Jan. 16, 2020) (dismissing Title VII discrimination claim where the plaintiff "fail[ed] to plausibly allege disparate treatment or impact on the basis of his religion, because he fail[ed] to describe the existence of any putative comparators or how he was 'treated differently' from them" (quoting the complaint)); *Murray v. Dutchess Cty. Exec. Branch*, No. 17-cv-9121, 2019 WL 4688602, at *10–11 (S.D.N.Y. Sept. 25, 2019) (dismissing claims of racial discrimination brought under Title VII where the plaintiff "broadly allege[d] that" certain events "culminating in his termination were . . . discriminatory" but, as here, failed to "identify any comparator employee . . . who was disciplined or otherwise treated differently than [the plaintiff] was under similar circumstances"); *Olivier v. Cty. of Rockland*, No. 15-cv-8337, 2018 WL 401187, at *8 (S.D.N.Y. Jan. 11, 2018) ("Plaintiff offers no allegation about *any* comparators for the [Title VII] charge at issue.  Given that Plaintiff does not allege the existence of any comparators, let alone that any comparators engaged in the same or even similar misconduct . . . , [p]laintiff has not adequately pleaded allegations from which it is 'plausible that a jury could ultimately determine that the comparators are similarly situated,' and therefore has failed to adequately allege disparate treatment that could plausibly support even a minimal inference of discrimination." (quoting *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014))); *Goodine v. Suffolk Cty. Water Auth.*, No. 14-cv-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017) ("[A] Title VII plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass."); *Moore v. Nat'l Tire & Battery*, No. 13-cv-1779, 2013 WL 5587295, at *2 (D. Md. Oct. 9, 2013) (finding that the plaintiff's racial discrimination allegations "fail to sustain a plausible inference that [d]efendant failed to promote [plaintiff] for discriminatory reasons.  [Plaintiff] does not allege the race, sex, or qualifications of the people who received the position in question and, thus, fails to identify any comparators"); *Erby v. Webster Univ.*, No. 13-cv-518, 2013 WL 5495586, at *5 (D.S.C. Oct. 1, 2013) ("Because [p]laintiff has failed to identify any comparators in either her complaint or her response brief, . . . it is recommended that her Title VII discrimination claim be dismissed."), *report and recommendation adopted, id.* at *1.

[7] It is true that "[c]ourts regularly conclude that plaintiffs have stated facts giving rise to an inference of discrimination by alleging that comparators were treated differently, without fleshing out *the exact relative characteristics* of those comparators."  *Tolton v. Jones Day*, No. 19-cv-945, 2020 WL 2542129, at *15 (D.D.C. May 19, 2020) (emphasis added).  Yet despite the fact that "a plaintiff need not plead [their] similarity to alleged comparators *with fine detail* in order to state a disparate treatment claim," *id.* (emphasis added), they must allege some facts giving rise to a plausible inference that they were treated differently than similarly-situated peers outside their protected class, *Budik*, 986 F. Supp. 2d at 7.  Here, Plaintiff failed to do so.

statement that "I was turned down for a job because of my race," is sufficient to survive a motion to dismiss as long as it is "accompanied by factual allegations that render that claim plausible").

In her opposition brief, however, Plaintiff points to a portion of the EEO documentation (attached to her Amended Complaint) where Ionta, one of her supervisors, told an investigator that "there was racial and social tension in [Plaintiff's] office."  ECF No. 27 at 6; ECF No. 17-3 at 4.  That, Plaintiff seems to argue, is enough to "nudge[] [her] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see also Attakora v. District of Columbia*, 943 F. Supp. 2d 152, 157 (D.D.C. 2013) (finding that "specific statements purportedly made" by a supervisor "reflecting an animus against individuals of" plaintiff's protected class were sufficient to sustain a discrimination claim).  The Court disagrees.  Although Ionta's statement can be considered despite its absence from the Amended Complaint, the statement itself—when read in context—is so generalized, vague, and undetailed that it does not meaningfully bolster Plaintiff's claims of racial discrimination—that is, it does not elevate the "conceivable" to the "plausible."

To start, it should be noted that Ionta's statement is contained in a FEMA EEO counselor's report concerning some of Plaintiff's allegations of discriminatory treatment; that document is attached to Plaintiff's Amended Complaint.  *See generally* ECF No. 17-3.  As explained, documents appended to complaints may be considered in deciding motions to dismiss without converting the motion to one for summary judgment.  *See, e.g.*, *Bullock v. Donohoe*, 71 F. Supp. 3d 31, 33 (D.D.C. 2014) ("In deciding the defendant's motion to dismiss under Rule 12(b)(6), the Court may consider the documents attached to the complaint and those incorporated by reference without triggering the conversion requirement of Fed. R. Civ. P. 12(d).").  The Court will do so here.

Even so, Ionta's statement cannot carry the substantial weight Plaintiff places upon it.  The statement that "there was racial and social tension in the office" is situated in the following paragraph in the FEMA EEO report:

> Mr. Ionta asserted he never saw any indication that [Plaintiff] was treated differently because she was African-American and by observation, he saw no overt evidence that [Plaintiff] was treated differently because she was African-American. Mr. Ionta affirmed there was racial and social tension in the office and there were tensions between the legacy FEMA people and the new ICE people; many FEMA people had been there lots of years (e.g. 30 years).

ECF No. 17-3 at 4.  Read in context, Ionta's "racial and social tension" statement was nothing more than a passing comment describing generalized racial tension, which—standing alone—is not sufficient to make out a plausible claim of disparate treatment.  Most importantly, Ionta's statement does not specify who, if anyone, was racially biased against Plaintiff.  Indeed, nowhere does the statement—or the report as a whole—indicate that Plaintiff herself was the target of those racial tensions.  Nor is there any connection between that statement and any particular supervisors or actions taken against Plaintiff.  The statement is not an admission or confession from Ionta; instead, and even when viewed in the light most favorable to Plaintiff, it is merely a generalized statement about the atmosphere in which Plaintiff worked.  In any event, a generalized opinion from one supervisor about the "racial tension" in Plaintiff's office is insufficient to attribute discriminatory intent to any or all of Plaintiff's supervisors, and to Hubbard in particular, to whom Plaintiff attributes most of the allegedly adverse action.  ECF No. 17-2 at 4–9; *see, e.g.*, *Howard v. D.C. Pub. Sch.*, 531 F. Supp. 2d 115, 118 (D.D.C. 2008) (concluding, in a Title VII case, that "there is no basis for 'inferring the personal attitudes of [one employee] from generalized allegations of racial friction and allegations concerning unnamed [employees],' nor is there any basis for inferring the personal attitudes of [the defendant employer's] decisionmakers from such allegations" (quoting the record)); *see also Parker v. Ill. Hum. Rights Comm'n*, No. 12-cv-8275,

2013 WL 5799125, at *7 (N.D. Ill. Oct. 25, 2013) (finding that, without more, one individual's discriminatory intent cannot be attributed to a different individual who was responsible for the adverse employment action); *cf. Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1079–80 (D.C. Cir. 1999) (refusing to find, at the summary judgment stage, that one employee's bias reflected in a discriminatory remark was sufficient to infer that another employee's termination of plaintiff was motivated by impermissible bias).  So, if Ionta's "racial and social tension" statement should be viewed as an admission that Ionta himself harbored racial animus—and the Court expressly concludes it was not—that would nevertheless be insufficient to make out a plausible claim that Plaintiff's other supervisors, and Hubbard in particular, harbored the same views.

More, Ionta's statement does not even generally describe the type or nature of "racial . . . tension" present in Plaintiff's workplace—and that matters here because Plaintiff is alleging that she was discriminated against because she is Black.  The statement does not characterize the tensions as being directed toward any particular racial group, and, indeed, the statement could be referring to racial tensions between other racial groups (e.g., Caucasians and Hispanics).  Other courts have recognized that such generalized statements of racial friction are insufficient to sufficiently allege discriminatory intent.  *See, e.g.*, *Holmes v. Gates*, 403 F. App'x 670, 673 (3d Cir. 2010) (affirming dismissal of Title VII claims and finding that "generalized grievances" about racial discrimination lack the "requisite specificity" to plausibly allege a Title VII claim); *see also Bates v. City of Chicago*, 726 F.3d 951, 957 n.5 (7th Cir. 2013) (finding, at summary judgment stage, that plaintiff failed to establish prima facie claim of race discrimination where his complaint "made nothing but vague and generalized allegations about the racial attitudes of [certain] defendants, and failed to make any specific allegations about how racism was the basis for" any of the alleged adverse action); *Von Zuckerstein v. Argonne Nat. Lab.*, 78 F.3d 587 (7th Cir. 1996)

(noting that "a generalized racial *animus* . . . is not enough to constitute a . . . Title VII violation").

To be sure, while "generalized statements of racial animus that are not directed at a plaintiff, when considered alongside other circumstantial evidence, may support an inference of discrimination," *Younge v. Fulton Jud. Cir. Dist. Att'y's Off.*, No. 20-cv-684, 2021 WL 4901896, at *2 (N.D. Ga. Mar. 10, 2021), here there are no "other" facts alleged supporting the theory that Plaintiff's supervisors acted as they did on account of her race.

For these reasons, the Court finds that Ionta's statement that "there was racial and social tension in the office" does not "nudge" Plaintiff's racial discrimination claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Count I is therefore dismissed in its entirety.

## B.        Title VII Gender Discrimination Claim (Count II)

Count II of the Amended Complaint alleges that Defendants discriminated against Plaintiff on account of her gender in violation of Title VII. ECF No. 17-2 at 9–10. The claim is also dismissed because it suffers from the same pleading infirmity as Count I.

As with her race discrimination claim, to survive a motion to dismiss Plaintiff's gender discrimination claim was required to allege

> facts from which it can reasonably be inferred that "(1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [her] employer took the action because of [her] membership in the protected class).

*Bartlette*, 208 F. Supp. 3d at 321–22 (quoting *Brown*, 774 F.3d at 1022)). Plaintiff was required to plead those elements consistent with the "plausibility" standard set forth in *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Plaintiff's gender discrimination claim falls short of these pleading requirements.  Similar to the racial discrimination claims in Count I, the Amended Complaint is devoid of any factual material that would support a "plausible inference" that Plaintiff's supervisors acted as they did on account of her gender.  To be sure, Plaintiff alleges conduct that may be adverse employment action, but there is not a shred of factual material in the Amended Complaint supporting the theory that such action was taken on account of her gender.  Merely "stat[ing] that similarly situated individuals outside of Plaintiff's protected class did not endure the treatment Plaintiff did" is not sufficient.  ECF No. 27 at 6; *see* also ECF No. 17-2 at 9.  Again, and as explained above in the context of her race discrimination claim, Plaintiff's unadorned allegation that "similarly-situated" persons of the opposite sex were treated differently is a mere legal conclusion lacking any factual support.  *See SS & T*, 2020 WL 1170288, at *5 ("'A plaintiff's assertion that [it] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough.'" (quoting *Bekkem*, 915 F.3d at 1275)).  This is precisely the type of "formulaic recitation of a cause of action's elements" the Supreme Court has said cannot survive a motion to dismiss.  *Twombly*, 550 U.S. at 545; *see also Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 288 (D.C. Cir. 2022) ("In fact, 'constru[ing] [a] complaint liberally in the plaintiff's favor' does not entail 'accept[ing] inferences unsupported by facts or legal conclusions cast in the form of factual allegations.'" (alterations in original) (quoting *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009)).  Other courts in this District have dismissed Title VII gender discrimination claims where, as in this case, the complaint fails to plausibly allege similarly-situated comparators.  *See, e.g.*, *Beaulieu*, 2019 WL 5579968, at *4 (dismissing the plaintiff's Title VII gender discrimination claim where, as here, the complaint failed to "identify any 'comparator' employees who were treated differently" or "'identif[y] specific statements purportedly made' by a supervisor

'reflecting an animus against individuals of' her protected class" (quoting *Attakora*, 943 F. Supp. 2d at 157)); *Redmon v. YMCA of Metro. Washington*, 417 F. Supp. 3d 99, 103–04 (D.D.C. 2019) (dismissing the plaintiff's Title VII gender discrimination claim where the complaint failed to allege appropriate comparators and plaintiff therefore could not "show that 'he was treated differently from similarly situated employees who are not part of the protected class'" (quoting *George*, 407 F.3d at 412)); *Townsend v. United States*, 236 F. Supp. 3d 280, 309–10 (D.D.C. 2017) (dismissing the plaintiff's Title VII gender discrimination claim where the complaint failed to plausibly allege appropriate comparator employees).  Count II is therefore dismissed.

### C.      ADEA Discrimination Claim (Count III)

Plaintiff's age discrimination claim (Count III) runs into the same issue as her race and gender discrimination claims:  There simply are no facts to support a plausible inference that Plaintiff's supervisors were motivated by age-based animus in any of their dealings with her.  With that link missing, Plaintiff's age discrimination claim cannot stand and is dismissed.

Plaintiffs pressing ADEA claims must plead

> facts from which it can reasonably be inferred that "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).

*Bartlette*, 208 F. Supp. 3d at 321–22 (quoting *Brown*, 774 F.3d at 1022).  The Supreme Court has recently held that while "age must be the but-for cause of *differential treatment,*" age need not be "a but-for cause of *the ultimate decision*" in order to establish causation under the federal-sector provision of the ADEA.  *Babb v. Wilkie*, __ U.S. __, __, 140 S. Ct. 1168, 1174 (2020).  Again, these elements must be pled consistent with *Twombly* and *Iqbal*'s "plausibility" standard.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Although Plaintiff was required to craft a complaint that contained "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, the Amended Complaint is barren of any factual material supporting the notion that Plaintiff's supervisors acted as they did on account of her age. Instead, and as with her race and gender discrimination claims, Plaintiff simply alleges that "[s]imilarly situated co-workers outside of the Plaintiff's Age group were not treated in the manner in which Plaintiff was." ECF No. 17-2 at 10. As explained in the foregoing sections, that "formulaic recitation" is no more than a legal conclusion, which is "never enough" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *SS & T*, 2020 WL 1170288, at *5. Plaintiff was required to plead *facts* supporting that element of her age discrimination claim, and she failed to do so. Count III is therefore dismissed, as well. Other court in and out of this Circuit have done the same in like circumstances. *See, e.g.*, *Yee v. Garland*, No. 21-cv-1185, 2022 WL 2046112, at *10 (D.D.C. June 7, 2022) (granting the government's motion to dismiss age discrimination claims where, as here, "plaintiff [did] not pled a single fact that would give rise to a plausible inference that [the adverse employment action] was motivated in any way by her age"); *Townsend*, 236 F. Supp. 3d at 308 (dismissing ADEA claim where, as here, plaintiff's complaint failed to allege sufficient facts that would allow a plausible inference that plaintiff was similarly-situated to comparator employee); *see also Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (holding that the absence of "any information as to whether [the comparator] employees were otherwise similarly situated or the specifics of their conduct" prevents "even a minimal inference of age discrimination").

### D.     Title VII Retaliation Claim (Count IV)

Count IV of Plaintiff's Amended Complaint alleges that her supervisors retaliated against her for reporting their conduct to FEMA's EEO office. ECF No. 17-2 at 10–11. However, most

of the action she alleges was taken against her is not sufficiently adverse to make out a retaliation claim.  Further, some of the action she complains of was never presented to FEMA's EEO office and is therefore unexhausted and not actionable here.  Still other allegedly adverse conduct predated her initial EEO reports and cannot form the basis of a retaliation claim.  Yet even after accounting for these issues, there are a few allegations that, assuming their truth, could be retaliatory, and so the Court will allow claims based on that conduct to proceed.  The remainder of Plaintiff's retaliation claim is dismissed.

"In order to sustain a claim for retaliation at the motion-to-dismiss stage, 'a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) his employer took an adverse personnel action against him; and (3) a causal connection exists between the two.'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016) (quoting *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014)).  The Court will address each prong of the pleading standard in turn.

1.    Statutorily Protected Activity

Here, there is no dispute that Plaintiff engaged in protected activity when she sought counseling from FEMA's EEO office on March 9, 2020.[8]  ECF No. 17-3 at 1; *see Bell v. Gonzales*, 398 F. Supp. 2d 78, 94 (D.D.C. 2005) ("Initiation of EEO counseling to explore whether an employee has a basis for alleging discrimination constitutes protected activity.").  Plaintiff also engaged in protected activity when she filed a formal EEO complaint on June 16, 2020, and when she amended that complaint on September 1 and September 22, 2020.  ECF No. 17-4 at 1; *see Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 150 (D.D.C. 2013) ("[P]rotected activity encompasses . . . the filing of both informal and formal EEO complaints.").

---

[8] Plaintiff's meeting with Ionta to discuss her low performance evaluation for the 2019 Fiscal Year does not constitute protected activity.  ECF No. 17-2 at 4.  There is no indication that Plaintiff "oppose[d] any discrete practice that [she] reasonably could have believed discriminated on the basis of race, color, religion, sex, or national origin" during that meeting.  *Morris v. McCarthy*, 825 F.3d 658, 673 (D.C. Cir. 2016).

2.    Adverse Personnel Action

i.    *Adverse Action*

As to the adverse action element, although Defendants initially argued that none of the conduct Plaintiff alleged was sufficiently adverse to support her retaliation claims, they then limited the argument to only her "allegations of various discrete incidents of insults and abuse." *Compare* ECF No. 22-1 at 16–20 *with* ECF No. 28 at 10.  Specifically, Defendants no longer contend that Plaintiff's allegations of "lower review scores, requiring her to work on off days without compensation, limiting core duties, and curtailed communication with coworkers" are sufficiently adverse to support a retaliation claim.  ECF No. 28 at 9–10.  So, what remains are Plaintiff's allegations that her supervisor "yelled at [her]," "insulted her," "gave her unreasonable deadlines and told her she did not do analysis," "was greatly disrespectful to [her]," "assigned impossible deadlines," "commented about how the Plaintiff needs to manage time better," "failed to provide clear communications," "rudely cut her off," "disparaged [her]," "embarrassed her in front of co-workers," and "undeservedly gave praise to co-workers."  *Id*.  Defendants say these actions are not sufficiently adverse and thus are not actionable under Title VII's antiretaliation provision.[9]  ECF No. 22-1 at 16–20; ECF No. 28 at 9–11.  In reply, Plaintiff does not specifically explain why these incidents are sufficiently adverse to support her retaliation claims; she concedes that Title VII and the ADEA "do not impose a civility standard" but asserts that "pervasive hostility is recognized as adverse."  ECF No. 27 at 5–6.  She also argues that her supervisor's "lack of clear communication" was meant to "set[] up an employee to fail."  *Id.* at 6.  Defendant has the better

---

[9] Defendants also argued that these actions are not sufficiently adverse to support Plaintiff's discrimination claims, ECF No. 28 at 9–10, an issue the Court does not reach because her discrimination claims are otherwise subject to dismissal for failure to provide sufficient factual allegations to support a plausible inference of race, gender or age discrimination.  *See supra* sections III.A–C.

of the argument, and the Court finds that much of Plaintiff's retaliation claim warrants dismissal as being insufficiently adverse.

In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Notably, this standard "involve[s] something short of what would ordinarily be considered a 'personnel action' (e.g., denial of promotion, discharge, salary reduction)," in the discrimination context. *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 75 (D.D.C. 2007); *see also Chambers*, 35 F.4th at 876 ("Unlike the antidiscrimination provision, the antiretaliation provision . . . prohibits even retaliatory actions that do not affect the terms, conditions, or privileges of employment, for example, an employer making a false criminal charge against an employee who had complained of discrimination, or a law enforcement agency refusing to investigate death threats made against an employee who had complained of discrimination.") (internal citations omitted). However, actionable *retaliation* claims "are [still] limited to those where an employer causes '*material* adversity,' not 'trivial harms,'" *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (quoting *Burlington N.*, 548 U.S. at 68), a principle left undisturbed by the D.C. Circuit's recent *en banc* decision in *Chambers* overturning the "objectively tangible harm" requirement previously applicable to *discrimination* claims.[10]

---

[10] *Chambers* is careful to make clear it does not overrule any D.C. Circuit precedent on Title VII retaliation claims. *See Chambers*, 35 F.4th at 876–77 (distinguishing discrimination and retaliation claims and explaining that the "considerations" that led the Supreme Court in *Burlington Northern* to impose a "materially adverse" requirement on Title VII retaliation claims do not "appl[y] to the antidiscrimination provision"); *see also id.* at 874 ("[T]he question before us, put in terms of the relevant statutory text, is whether an employer that denies an employee's request for a job transfer because of her sex (or another protected characteristic) 'discriminate[s] against' the employee with respect to the 'terms, conditions, or privileges of employment.'" (quoting 42 U.S.C. § 2000e-2(a)(1))); *Harbour v. Univ. Club of Washington*, No. 21-cv-2047, 2022 WL 2304033, at *6 n.4 (D.D.C. June 27, 2022) (noting that *Chambers* "expressly distinguished discrimination and retaliation claims—in effect preserving case law indicating that a purely lateral transfer could not be a materially adverse event for the purposes of the latter"). Thus, the Court perceives nothing in *Chambers* that would impact the analysis of Plaintiff's Title VII retaliation claim.

Here, that "material adversity" retaliation standard bars Plaintiff's retaliation claims arising from the multiple incidents of insults and other verbal abuse she claims her supervisor hurled at her in 2020.  Yelling, rude comments, disparaging remarks, and statements that embarrass a claimant in front of coworkers are, even though uncivil and objectionable, not actionable bases for Title VII retaliation claims.  *See, e.g.*, *Howard v. Kerry*, 85 F. Supp. 3d 428, 435 (D.D.C. 2015) (dismissing Title VII retaliation claim in part because supervisor's yelling "in an intimidating fashion" did not rise to the level of adverse action); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 14 (D.D.C. 2010) (dismissing Title VII retaliation claims premised on a supervisor's episode of yelling at the plaintiff); *see also Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 55–56 (2d Cir. 2018) (affirming the district court's dismiss of Title VII retaliation claims and finding that "[plaintiff's] complaints" about a supervisor's "rude" behavior "are nothing more than petty slights, if they are slights at all" and did not constitute adverse action); *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 515 & n.25 (D. Md. 2011) (dismissing Title VII retaliation claims and holding that being "yelled at" and "criticized" did not constitute adverse employment actions under the more lenient standard for such actions applied to such claims).  So, Plaintiff's claims that her supervisor "yelled at [her]," "insulted her," "was greatly disrespectful to [her]," "commented about how the Plaintiff needs to manage time better," "rudely cut her off," "disparaged [her]," "embarrassed her in front of co-workers," and "undeservedly gave praise to co-workers" cannot sustain retaliation claims under Title VII.  *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (finding that "alleged profanity-laden yelling . . . did not meet the requisite level of regularity or severity to constitute material adversity for purposes of a retaliation claim").

The same result holds for Plaintiff's allegations that her supervisor "gave her unreasonable deadlines" and "impossible deadlines" and "failed to provide clear communications." To be sure, "frequently tightening deadlines . . . can be considered materially adverse action" that would support a Title VII retaliation claim. *Allen v. Napolitano*, 774 F. Supp. 2d 186, 203 (D.D.C. 2011). Here, however, Plaintiff's allegations of "unreasonable" and "impossible" deadlines are undetailed, vague, and—most importantly—do not describe pervasive assignment of such work. Not only does she fail to explain why the deadlines at issue were "unreasonable" or "impossible," but there is only one, specific day on which Plaintiff alleges she was given such assignments. ECF No. 17-2 at 5–6 (alleging that, on July 14, 2020, Hubbard "gave [Plaintiff] unreasonable deadlines"). So, because Plaintiff has "not alleged that meeting her deadlines was often impossible, that her workload increased dramatically or that she was buried in work," the "claim is not sufficient to qualify as a materially adverse action" such that it would dissuade a reasonable employee from engaging in protected conduct. *See Allen*, 774 F. Supp. 2d at 203 (dismissing Title VII retaliation claim premised on plaintiff "receiv[ing] unreasonable deadlines for completing time-sensitive assignments"); *see also Green v. Mayorkas*, No. 18-cv-2589, 2021 WL 5564650, at *5 (D.D.C. Nov. 29, 2021) (explaining, in the summary judgment context, that "[e]ven in the broader context of a retaliation claim, 'unreasonable deadlines and reporting requirements' . . . are 'unlikely to prevent a reasonable employee from engaging in protected activity and therefore do[ ] not amount to . . . materially adverse action[s].'" (third, fourth, and fifth alterations in original) (quoting *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 198 (D.D.C. 2014))).

Accordingly, Plaintiff's claims of retaliation based on yelling, insults, assignment of unreasonable and impossible deadlines, disrespectful, disparaging, and rude conduct, comments regarding her time management, and communication failures is dismissed.

        *ii.*      *Exhaustion*

Defendants further contend that any retaliation claims arising from events after September 17, 2020, should be dismissed because Plaintiff has not administratively exhausted them.  ECF No. 22-1 at 13–16.  This covers Plaintiff's allegations concerning her leave of absence and the allegedly retaliatory treatment she received after returning to work, including, as explained, restricting her work and communications with colleagues and requiring supervisor approval on emails; accusations of aggressive behavior; poor performance review for 2021; and failure to timely approve leave requests.  *Id.*; *see also* ECF No. 17-2 at 7–9.  September 17 is the operative date because FEMA "accepted twelve separate claims for investigation into charges of discrimination and retaliation," the last of which occurred on September 17.  ECF No. 22-1 at 14; *see also* ECF No. 17-4 at 1–3.  Because Plaintiff has not shown that any retaliatory conduct that allegedly occurred after that date has been subject to EEO process, Defendants urge the Court to dismiss the *discrimination* and *retaliation* claims arising from that conduct.  ECF No. 22-1 at 13–16.  Defendants rely on what they characterize as the "majority" view in this District that "exhaustion [is required] for all discrete acts of discrimination and retaliation 'regardless of any relationship that may exist between those discrete claims and any others.'"  *Id.* at 15 (quoting *Moran v. Barr*, No. 18-cv-1986, 2020 WL 4286825, at *10 (D.D.C. July 27, 2020)).  They also, however, acknowledge the minority view that "there is no separate exhaustion requirement if subsequent alleged retaliatory acts are 'of a like kind to the retaliatory acts alleged in the EEOC charge such that they would have come within the scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination.'"  *Id.* at 15 n.2 (quoting *Hazel v. Wash. Metro. Area Transit Auth.*, No. 02-cv-1375, 2006 WL 3623693, at *5, 8 (D.D.C. Dec. 4, 2006)).

Yet despite requesting and receiving multiple extensions of time to file an opposition, Plaintiff does not truly address these arguments head-on. Instead, she argues that the less exacting standard of exhaustion set forth in the minority position articulated above applies to her *hostile work environment* claims; namely, that all allegations that "are like or reasonably related to the allegations of the [EEO] charge and growing out of such allegations" should be treated as exhausted. ECF No. 27 at 3–5. Under that standard, she contends, her technically-unexhausted hostile work environment claims should be allowed to move forward because the allegations arising after September 17 are "related to the hostility and treatment Plaintiff detailed in her EEO complaint." *Id.* at 4. That may be so, but Defendants never contended that Plaintiff's *hostile work environment* claim was unexhausted. They pressed that argument only against her *discrimination* and *retaliation* claims. ECF No. 22-1 at 13–16; ECF No. 28 at 6–9 ("Defendants did not argue that Plaintiff had failed to exhaust her hostile work environment claims; rather, they argued that her discrimination or retaliation claims *based on discrete conduct* that occurred after September 17, 2020, should be dismissed due to her failure to administratively exhaust those claims."). The question, then, is whether Plaintiff's discrimination and retaliation claims arising after September 17, 2020, were exhausted—yet Plaintiff does not directly grapple with that issue. In fact, the only on-point response to Defendants' arguments the Court discerns in Plaintiffs' opposition is her restatement of the minority view articulated above ("For exhaustion purposes, the EEO charge encompasses claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."), but she does not explain why it should be applied over the majority approach or its application to her retaliation claims. ECF No. 27 at 3–4. For those reasons, Defendants say Plaintiff has conceded the exhaustion argument. The Court agrees.

As the Court has explained previously, "'when a [litigant] files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.'" *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 278 (D.D.C. 2018) (quoting *Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012)); *see also Colindres v. U.S. Dep't of State*, No. 21-cv-348, 2021 WL 5906041, at *4 (D.D.C. Dec. 14, 2021) ([B]y failing to address [an issue raised in the defendant's motion to dismiss] in their opposition," plaintiffs "conceded the [defendant's] argument."), *appeal docketed*, No. 22-5009 (D.C. Cir. Jan. 20, 2022); *Gable v. United States*, No. 12-cv-1634, 2020 WL 8186344, at *3 (D.D.C. Feb. 28, 2020) (similar), *report and recommendation adopted*, 2020 WL 6392761 (D.D.C. Nov. 2, 2020).  Further, as Defendants set forth, "'[p]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.'" *Cox v. Nielsen*, No. 16-cv-1966, 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019) (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)).  And a party may "forfeit [an argument] because [the party] does not further develop it (or even mention it again) after [a] 'single, conclusory statement.'" *United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) (quoting *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008)).

Here, Plaintiff failed to address Defendants' core argument, which is that certain of her *retaliation* and *discrimination* claims are unexhausted and therefore must be dismissed.  ECF No. 22-1 at 13–16; ECF No. 28 at 6–9.  To be sure, she reiterates this District's minority position that even exhausted retaliation claims can proceed so long as they "are like or reasonably related to the allegations of the [EEO] charge and growing out of such allegations," but she does not further develop that argument with respect to the retaliation claims.  ECF No. 27 at 3–4.  Instead, she applies that standard to her hostile work environment claim—an entirely distinct issue and not

responsive to Defendants' contentions. *Id.* Merely citing a disputed legal standard and then failing to apply it to the claims at issue is precisely the type of "perfunctory and undeveloped" argument courts deem waived. *Cf. Stewart v. Gracik*, No. 10-cv-698, 2011 WL 4559179, at *14 (W.D. Mich. Aug. 26, 2011) (finding that "merely citing [a] legal standard" and making conclusory arguments "without reference to the applicable law or facts at issue in this case" is not sufficient to "adequately raise [an] issue"), *report and recommendation adopted*, 2011 WL 4571871 (W.D. Mich. Sept. 30, 2011). Thus, because Plaintiff did not meaningfully respond to Defendants' exhaustion argument with respect to her retaliation claims, the Court will deem the argument conceded. So, Plaintiff's retaliation claims arising from her medical leave of absence from September 2020 to March 2021 and the conduct she was allegedly subjected to following her return to work are dismissed.

In any event, Defendants are correct on the merits of their exhaustion argument. As they lay out, "the majority of courts in this jurisdiction now require plaintiffs to exhaust each discrete claim of retaliation." *Jones v. Granholm*, No. 20-cv-472, 2021 WL 2530677, at *7 (D.D.C. June 21, 2021); *see also Moran*, 2020 WL 4286825, at *10 (collecting cases); *Rashad v. Washington Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) ("Most judges in this district have held that plaintiffs alleging discrete acts of discrimination or retaliation 'must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.'" (quoting *Coleman–Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004))).[11] While the D.C. Circuit has on several occasions declined to expressly weigh-in on the

---

[11] Then-Judge Ketanji Brown Jackson helpfully surveyed the divide on the exhaustion issue in *Mount v. Johnson*, 36 F. Supp. 3d 74, 84–86 (D.D.C. 2014).

issue,[12] this Court finds the majority view more concordant with the Supreme Court's articulation in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Further, "[r]equiring a plaintiff to exhaust each discrete claim of discrimination or retaliation 'comports with the purpose of the exhaustion doctrine to give the agency notice of a claim and [the] opportunity to handle it internally and ensures that only claims plaintiff has diligently pursued will survive.'"  *Romero–Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (second alteration in original) (quoting *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)).  So, and contrary to Plaintiff's contentions, she was required to administratively exhaust each discrete claim of retaliation.  Here, however, Defendants say there is no evidence that Plaintiff presented her claims concerning her medical leave from September 2020 to March 2021 or the allegedly retaliatory conduct she endured upon her return to an EEO counselor for investigation.  ECF No. 22-1 at 14–16.  Plaintiff does not dispute that in her papers.  In fact, a review of the EEO investigation documents Plaintiff attached to her Amended Complaint show that the last discrete act of retaliation accepted by FEMA occurred on September 17, 2020—the day before Plaintiff began her leave.  Accordingly, her retaliation claims arising from her medical leave and subsequent return to work are dismissed.[13]

---

[12] *See, e.g.*, *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 527 n.1 (D.C. Cir. 2019); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (explaining that the court "need not decide whether *Morgan*" now requires individualized exhaustion of discrete claims).

[13] The Court's findings on exhaustion apply equally to the discrimination claims contained in Counts I–III.  Thus, even though the discrimination claims fail for other, independently dispositive reasons, any claim of discrimination based on conduct occurring after September 17, 2020, is unexhausted and must be dismissed for that reason, too.  *See, e.g.*, *Gomez v. McDonough*, No. 21-cv-1685, 2022 WL 1471375, at *6 (D.D.C. May 10, 2022) (finding that the plaintiff failed to exhaust Title VII discrimination claims where, as here, "plaintiff nowhere suggests that he sought [EEO] counseling within the requisite 45 days or at any other time" concerning the conduct he alleged was discriminatory).

So, at this juncture, the following allegations remain cognizable in the Title VII retaliation claim: the negative performance evaluation from February 2020; the allegation that Plaintiff was required to work on scheduled days off with no pay and work through lunch breaks; the alleged denial of requests for leave; the alleged restrictions on Plaintiff's work duties; the curtailed communications with coworkers; and the threatened "worse consequences" if Plaintiff did not sign a performance improvement plan.

### 3.    Causal Link

As to the causal link between the cognizable adverse action and her protected activity, Plaintiff relies merely on the temporal proximity between the two. *See* ECF No. 27 at 6–8 ("Plaintiff lodged a good faith complaint and suffered hostility on the heels of the agency acknowledging [her] complaint . . . ."). The causation prong of the pleading standard "may be established if the plaintiff alleges 'that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter.'" *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (quoting *Marshall v. Potter*, 634 F. Supp. 2d 66, 73 (D.D.C. 2009)). Courts have held that "mere temporal proximity" between a protected activity and an adverse employment action can be sufficient evidence of causality, but have also "uniformly h[eld] the temporal proximity must be '*very close*.'" *Keys*, 37 F. Supp. 3d at 372 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit." *Greer*, 113 F. Supp. 3d at 311; *see also Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (per curiam) (noting that the Supreme Court in *Breeden* cited with approval circuit cases accepting temporal proximity of three and four months as evidence of causation), *abrogated on other grounds by Green v. Brennan*, 578 U.S. 547

(2016); *Rattigan*, 503 F. Supp. 2d at 77 ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.").  "For purposes of analyzing temporal proximity, the courts in this Circuit look at not only the filing of the complaint, but also subsequent protected activity." *Turner v. U.S. Capitol Police Bd.*, 983 F. Supp. 2d 98, 108 n.5 (D.D.C. 2013), *aff'd*, 653 F. App'x 1 (D.C. Cir. 2016).

In this case, Plaintiff's first cognizable allegation of adverse employment action—the "undeserved" low performance evaluation in February 2020—predated her initial protected activity, which was the EEO counseling session on March 9, 2020.  ECF No. 17-2 at 2, 4.  Thus, the low performance evaluation cannot form the basis of a retaliation claim.  *See, e.g.*, *Peace-Wickham v. Walls*, 409 F. App'x 512, 522–23 (3d Cir. 2010) (holding that plaintiff "cannot establish a sufficient causal relationship between her protected activities" and adverse employment action because the adverse action "predated all of her protected activities"); *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 461 (5th Cir. 2008) ("[M]any of the actions [plaintiff] complains of cannot be retaliatory because they predate his participation in any protected activity.").

On the other hand, the Court finds that the temporal proximity between Plaintiff's protected activity and the remainder of the cognizable adverse employment action is sufficient—barely—to make out a prima facie case of retaliation.  As explained, the initial protected activity came on March 9, 2020, and the next cognizable allegation of adverse action falls on June 5, 2020, when Plaintiff alleges that Hubbard "required [her] to work on scheduled days off (no pay) and [] to work through lunch."  ECF No. 17-2 at 2, 4.  Although that is pushing up against the edge of the three-month window courts in this Circuit have characterized as "the outer limit" of temporal causation, the Court—drawing, as it must, "all inferences in favor of the nonmoving party," *Harper Woods*, 589 F.3d at 1298—finds that Plaintiff has sufficiently alleged a causal link between

her protected activity on March 9, 2020, and the adverse action on June 5, 2020.  Her next protected activity occurred on June 16, 2020, when she filed a formal EEO complaint.  ECF No. 17-2 at 2; ECF No. 17-4 at 1.  That was followed by a string of alleged adverse actions beginning on June 24 (Hubbard failed to "timely" meet with Plaintiff "to discuss her performance plan for fiscal year 2020") and lasting throughout the summer (e.g., curtailing Plaintiff's work responsibilities and denying requests for leave) until mid-September, when she took leave.  ECF No. 17-2 at 4–7.  Those allegations fall within the three-month window courts in this Circuit have considered to be appropriate for establishing causation by temporal proximity.  Thus, the Court finds that Plaintiff has sufficiently pled a causal connection between her protected activity and the remainder of the cognizable adverse employment action—that is, the allegations that she was:  required to work on days off and through lunch; that her requests for leave were denied; that her work duties and communications with co-workers were restricted and curtailed; and was threatened with other reprisals if she did not sign a performance improvement plan.  *Compare Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 344 (D.D.C. 2016) (finding that a "gap of approximately three months between" the protected activity and the allegedly adverse action "is sufficient to establish temporal proximity" at the motion to dismiss phase) *with Allen*, 774 F. Supp. 2d at 201 n.2 (finding that gap of six months between the protected conduct and adverse employment action was "simply too long to permit an inference of causation from temporal proximity").

*       *       *       *       *

Here is where that leaves things:  The race, gender, and age discrimination claims set forth Counts I, II, and III, respectively, do not adequately allege a link between any adverse employment action and any discriminatory animus and are therefore dismissed.  As to Count IV, Plaintiff's

retaliation claim based on the insults and verbal harassment she allegedly suffered; the "unreasonable" and "impossible" work deadlines she was assigned and the "lack of clear communication" provided by her supervisor; her leave spanning September 2020–March 2021 and the conduct she was allegedly subjected to upon her return; and the negative performance evaluation from February 2020—including the associated loss of a bonus—are also dismissed. What remains are Plaintiff's retaliation claims based on her allegations that:  her supervisor required her to work on scheduled days off with no pay and work through lunch breaks on or about June 5, 2020 (ECF No. 17-2 at 4), denied her requests for leave between July and September 2020 (*id.*), restricted Plaintiff's work duties between July and September 2020 (*id.* at 4–5), curtailed her communications with coworkers between July and September 2020 (*id.*), and threatened "worse consequences" if Plaintiff did not sign a performance improvement plan on or about August 31, 2020 (*id.* at 6).  Retaliation claims based on that conduct may proceed and are not dismissed.

The Court now turns to Plaintiff's Title VII hostile work environment claim (Count V).

### E.     Title VII Hostile Work Environment Claim (Count V)

The final count of Plaintiff's Amended Complaint is a Title VII hostile work environment claim.  The allegation must be dismissed because the conduct Plaintiff says was visited on her by her supervisors is not severe or pervasive enough to sustain such a claim.

Claims of a hostile work environment will survive a motion to dismiss only if the pleadings allege facts capable of supporting plausible inferences that

> (1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.[14]

---

[14] Again, nothing in *Chambers* alters the pleading requirements for Title VII hostile work environment claims.  Indeed, and just as with Title VII retaliation claims, *Chambers* distinguished discrimination claims from allegations of a hostile

*Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012); *see also Baloch*, 550 F.3d at 1201 (noting that, to prevail on a Title VII hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 219–20 (D.D.C. 2013) (dismissing hostile work environment claim where plaintiff's complaint contained "no allegations of discriminatory or retaliatory 'intimidation, ridicule, [or] insult' in her day-to-day work environment" (alteration in original) (quoting *Harris*, 510 U.S. at 21)).  This analysis requires the Court to look "'at all the circumstances,' including the 'frequency of the [alleged] discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007) (quoting *Farragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). The Court must "assess the timeline of events as a whole," to determine whether, in totality, the facts may plausibly support a conclusion that the conduct "alter[ed] the conditions of [her] employment and create[d] an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (second alteration in original) (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013)).  "Generally speaking, '[u]se of the same discrete acts, upon which the plaintiff bases h[er] discrimination and retaliation claims, to support a hostile work environment claim is disfavored.'" *Adams v. U.S. Dep't of the Navy*, No. 17-cv-1618, 2020 WL

---

work environment, noting that cases involving the latter "have no bearing on a case in which an employer discriminates against an employee with respect to the *actual* terms or conditions of employment." *Chambers*, 35 F.4th at 877–78 (explaining that, unlike Title VII discrimination cases, "[t]he thrust of the hostile work environment cases is that an abusive working environment amounts to a '*constructive* alteration in the terms or conditions of employment' only if harassment is severe or pervasive" (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998))).

2308581, at *6 (D.D.C. May 8, 2020) (alterations in original) (quoting *Townsend*, 236 F. Supp. 3d at 312)). More, and contrary to Plaintiff's desired standard, the Court is not at this stage in the proceedings required to "take the allegation by the Plaintiff that the cumulative effect of the [discrete] acts she endured was hostile." ECF No. 27 at 9. Rather, the Court must take the allegations that certain conduct occurred as true, and then determine whether those allegations contain enough factual material to raise a plausible inference that she was subjected to a hostile work environment. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Hemp Indus. Ass'n.*, 36 F.4th at 288 ("'[C]onstru[ing] [a] complaint liberally in the plaintiff's favor' does not entail 'accept[ing] inferences unsupported by facts or legal conclusions cast in the form of factual allegations.'" (quoting *Harper Woods.*, 589 F.3d at 1298)).

The D.C. Circuit has explained that severity and pervasiveness "are complementary factors and often go hand-in-hand, but a hostile work environment claim c[an] be satisfied with one or the other." *Brooks*, 748 F.3d at 1276. Thus, Plaintiff must either allege a connected series of incidents that are "'sufficiently continuous and concerted' to be considered pervasive" or set forth facts showing that "a single episode is 'severe enough' to establish a hostile working environment." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (internal citations omitted) (first quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997), and then quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)); *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005) ("[P]ervasiveness and severity 'are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the [antidiscrimination] statute[s].'" (quoting *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002))). "[T]he standard for severity and pervasiveness is . . . an objective one." *Baird*

*v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015) (emphasis omitted).  That is, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23)).

Here, none of Plaintiff's claims of discriminatory and retaliatory treatment are sufficiently severe—either individually or collectively—or pervasive to support her hostile work environment claim.  To start, Plaintiff complains of a number of work-related actions by her supervisors, including restricting her responsibilities and limiting the meetings she could attend and the colleagues she could speak with (ECF No. 17-2 at 4–5, 8); lowering her performance evaluations (*id.* at 4, 8); assigning her the same work goals as a prior year (*id.* at 8); imposing supervisory requirements on her emails and her computer use (*id.*); threatening "worse consequences" if Plaintiff did not sign a performance improvement plan (*id.* at 6); providing only negative feedback during evaluations (*id.*); imposing "unreasonable" and "impossible" deadlines (*id.* at 5–6); failing to "provide clear communications" or "timely meet" with her to discuss her performance plan for an upcoming year (*id.* at 4, 6); denial of leave (*id.* at 4, 9); and being required to work on days off and through lunch breaks (*id.* at 4).  But courts in this Circuit "typically do not find these types of 'work-related actions by supervisors' to be sufficient for a hostile work environment claim." *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (dismissing Title VII hostile work environment claims predicated on, similar to this case, "placement on the [performance improvement plan]" and "receipt of unfavorable feedback").  That is because actions of the type Plaintiff alleges, including the exclusion from work teams, "the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context."

*Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing Title VII hostile work environment claims premised on, similar to here, "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments"); *see also Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 54 & n.10 (D.D.C. 2015) (dismissing Title VII hostile work environment claims where, as here, the plaintiff reported being "stripped of many of the duties of his position").

The imposition of difficult workplace deadlines or threats of other personnel action are likewise insufficient to transform an uncivil work environmental into a hostile one. *See, e.g.*, *Morales v. Gotbaum*, No. 10-cv-221, 2012 WL 13036867, at *10 (D.D.C. Apr. 17, 2012) (dismissing Title VII hostile work environment claims premised on, among other things, "personnel disputes . . . regarding work deadlines, the content of assignments, and work reports"); *Newton v. Off. of the Architect of the Capitol*, 839 F. Supp. 2d 112, 117 (D.D.C. 2012) (dismissing Title VII hostile work environment claims and noting that "'threatened' job related consequences for the employee's refusals to meet workplace expectations did not demonstrate a hostile work environment pervaded by discrimination"). The same goes for Plaintiff's claims of denial of leave, which apparently happened on more than one occasion. *See Nurriddin*, 674 F. Supp. 2d at 93–94 (granting a motion to dismiss Title VII hostile work environment claim premised in part on repeated denial of leave requests). On the other hand, Plaintiff's allegations that she was asked to work on scheduled days off and through a lunch break are confined to a single day in June 2020. *See* ECF No. 17-2 at 4 ("On or about June 5, 2020, the Plaintiff's new supervisor, Pamela Hubbard, required the Plaintiff to work on scheduled days off (no pay) and had to work through lunch."). Such claims are neither sufficiently severe or pervasive to bolster her hostile work environment claim. *See, e.g.*, *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 88 (D.D.C. 2014) (dismissing Title VII hostile work environment claim because the employer's "denial of the

requests for days off . . . did not create an objectively hostile environment as a matter of law"); *Lancaster v. Vance-Cooks*, 967 F. Supp. 2d 375, 391 (D.D.C. 2013) (dismissing Title VII hostile work environment claim premised in part on plaintiff's claim, similar to this case, that he was "denied a lunch break *once*"); *see also Schmitz v. Walgreens Co.*, No. 17-cv-80478, 2017 WL 9831637, at *2 (S.D. Fla. Nov. 28, 2017) (dismissing Title VII hostile work environment claims and concluding that "[a] denial either of breaks, days off and managerial training does not rise to the level of a hostile work environment"). Finally, being assigned the same work goals as a prior year and one's supervisor failing to communicate clearly or timely meet with an employee to discuss future work is assuredly not the type of "severe" conduct actionable in a Title VII suit. Again, those "work-related actions by supervisors" are simply not sufficient to make out a hostile work environment claim. *Munro*, 839 F. Supp. 2d at 366. For these reasons, the work-related conduct Plaintiff alleges cannot sustain her hostile work environment claim.[15]

Further, Plaintiff also alleges a number of incidents of verbal harassment and generally rude and "greatly disrespectful" conduct by her supervisors, including episodes where her supervisor cut her off in conversations, disparaged her in front of colleagues, and "undeservedly gave praise to co-workers in front of Plaintiff" to humiliate her. ECF No. 17-2 at 5–6. She also says she was accused of being aggressive. *Id.* at 8. These, too, are not of the severity required to sustain a hostile work environment claim, and courts in this Circuit have so held. Indeed, "the

---

[15] The Court acknowledges that some courts outside this Circuit have found that "an employer may create a hostile work environment by 'deliberate sabotage of a victim's work performance, such as simply assigning her task[s] that are impossible to accomplish.'" *Goode v. Camden City Sch. Dist.*, No. 16-cv-3936, 2019 WL 6243156, at *19 (D.N.J. Nov. 22, 2019) (quoting *Cardenas v. Massey*, 269 F.3d 251, 262 n.8 (3d Cir. 2001)). In *Cardenas*, for example, the court found that plaintiff was set up to fail when he was given contradictory instructions and berated when he failed to comply, and was therefore subjected to a hostile work environment. 269 F.3d at 262; *see also* ECF No. 27 at 6 (alleging that Plaintiff's supervisor's "fail[ure] to provide clear and consistent communications" created a work environment "established for the purpose of setting up an employee to fail"). These cases are not controlling here and, in any event, run headlong into the law of this Circuit, which, as explained, generally holds that "work-related actions by supervisors" are "typically" not "sufficient for a hostile work environment claim." *Munro*, 839 F. Supp. 2d at 366.

D.C. Circuit has held that workplace tribulations, such as 'petty insults, vindictive behavior, and angry recriminations[,]' are not actionable under Title VII." *Dieng v. Am. Insts. for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 15 (D.D.C. 2019) (alteration in original) (quoting *Brooks*, 748 F.3d at 1277–78). So, the rude and disrespectful behavior Plaintiff complains of also does not advance her hostile work environment claim. *See, e.g.*, *Dieng*, 412 F. Supp. 3d at 14 (dismissing Title VII hostile work environment claims based on "denial of teleworking," "yelling at [plaintiff] during staff meetings," "ignoring [plaintiff] at those meetings," and "constant questioning of [plaintiff's] work"); *Nurriddin*, 674 F. Supp. 2d at 94–95 (dismissing Title VII hostile work environment claims premised on, amongst other conduct, disparaging remarks); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54–57 (D.D.C. 2004) (dismissing Title VII hostile work environment claims based on the plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment). And as to Plaintiff's allegation that she was accused of being aggressive, a single such accusation of misconduct (assuming it is false) is certainly not severe or pervasive enough to make out a hostile work environment claim. *Cf. Bartlette*, 208 F. Supp. 3d at 326–27 ("[T]he court can envision a scenario where *constant* false accusations of misconduct," coupled with other actions, "might be sufficiently severe and pervasive to constitute a hostile working environment." (emphasis added)). To be sure, many of Plaintiff's allegations unfortunately reflect an uncivil work environment that was no doubt difficult to navigate. But in this jurisdiction, "simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim." *Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 171 (D.D.C. 2013).

It is also significant here that Plaintiff has attempted to "bootstrap [her] alleged discrete acts of retaliation into a broader hostile work environment claim"—something courts in this Circuit "frown on." *Id.* at 164 (quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007)).  More, and as Defendants point out, courts here and elsewhere have dismissed hostile work environment claims based on circumstances as or more oppressive than those Plaintiff alleges.  *See, e.g.*, *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 155 (D.D.C. 2014) (dismissing a hostile work environment claim based in part on allegations that the plaintiff was "confronted in a very hostile manner" by a coworker and endured "verbal abuse, condescension, and castigation" at meetings); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing a hostile work environment claim where the plaintiff was placed on leave because of a false accusation, colleagues criticized his accent, he was told that he could easily be replaced with an American, and his supervisor told him that they would not hire other Africans); *see also Baloch*, 550 F.3d at 1201 (affirming grant of summary judgment on a hostile work environment claim where defendant yelled, used profanity, and threatened arrest); *George*, 407 F.3d at 408, 416–17 (affirming grant of summary judgment on hostile work environment claim because statements by three employees over six-month period that plaintiff should "go back where she came from" and separate acts of yelling did not rise to level of severity necessary to find a hostile work environment).

So, because none of the allegedly discriminatory or retaliatory conduct Plaintiff sets forth clears the "severe or pervasive" hurdle, the Court will dismiss her hostile work environment claim (Count V).

**CONCLUSION**

For the reasons set forth herein, Plaintiff's discrimination claims (Counts I–III) and hostile work environment claim (Count V) are **DISMISSED** without prejudice.[16]  Her retaliation claim (Count IV) is **DISMISSED IN PART** (without prejudice), but her claims that her supervisor required her to work on scheduled days off with no pay and work through lunch breaks on or about June 5, 2020 (ECF No. 17-2 at 4), denied her requests for leave between July and September 2020 (*id.*), restricted Plaintiff's work duties between July and September 2020 (*id.* at 4–5), curtailed her communications with coworkers between July and September 2020 (*id.*), and threatened "worse consequences" if Plaintiff did not sign a performance improvement plan on or about August 31, 2020 (*id.* at 6) may proceed.  Accordingly, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Date:  August 18, 2022

                                           _____
                                           G. MICHAEL HARVEY
                                           UNITED STATES MAGISTRATE JUDGE

---

[16] Although Defendants ask that the Amended Complaint be dismissed with prejudice, *see* ECF No. 22-1 at 28 and ECF No. 28 at 17, the Court, in its discretion, will dismiss without prejudice because "the Court does not foreclose the possibility that Plaintiff[] might be able to state a claim for relief."  *Crawford v. Barr*, No. 17-cv-798, 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) (dismissing Title VII litigant's first amended complaint but permitting "one more opportunity"); *see also Dickerson v. District of Columbia*, 70 F. Supp. 3d 311, 326 (D.D.C. 2014) (permitting Title VII litigant to file a second amended complaint).